Filed 3/2/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| BIANKA M., a Minor, etc., | B267454 |
| Petitioner, | (Los Angeles County Super. Ct. No. BF052072) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| GLADYS M., | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS in mandate. Holly J. Fujie, Judge. Petition denied.

Irell & Manella, Joshua C. Lee, Stephen A. Rossi and Meiqiang Cui; Public Counsel and Nickole G. Miller for Petitioner, Bianka M.

No appearance for Respondent.

Gibson, Dunn & Crutcher, LLP, Julian W. Poon, Eric A. Westlund, Nathaniel P. Johnson, Victor Lee, Lali Madduri, Jennifer Rho and Sarah G. Reisman, as Amicus Curiae on behalf of the Immigrant Legal Resource Center, the Los Angeles Center for Law and Justice, and the Immigrant Defenders Law Center.

## INTRODUCTION

Petitioner Bianka M.[1] is a 13-year old girl from Honduras who entered the United States without documentation in 2013. After a brief detention by federal immigration authorities, Bianka resettled in Los Angeles where she now lives with her mother. Bianka's mother and her alleged biological father, Jorge, never married. Jorge currently resides in Honduras.

Bianka hopes to avoid deportation by obtaining "special immigrant juvenile" (SIJ) status—a classification created by Congress to provide special immigration protection to undocumented, unaccompanied children entering the United States who have been the victims of parental abuse, neglect, abandonment or some similar circumstance. (8 U.S.C. § 1101(a)(27)(J) (SIJ statute).) When applying for SIJ status, a child must attach an order from a state court containing three specific factual findings: (1) the child is in the custody of a court appointed agency, guardian or other individual; (2) the child cannot reunify with one or both parents due to abuse, neglect, abandonment or other similar basis under state law; and (3) it is not in the child's best interest to return to her home country or her parents' home country. (*Id*.; 8 C.F.R. § 204.11(d)(2) (July 6, 2009).) In California, any trial court called upon to adjudicate issues of child custody or welfare, including the probate, family and juvenile divisions of the superior courts, has jurisdiction to make the findings necessary to allow the child to apply for SIJ status. (Code Civ. Proc., § 155, subd. (a).)

In many cases, a child who seeks SIJ status will be involved in proceedings in the juvenile court (for foster home placement) or the probate court (for the appointment of a legal guardian). However, where the child has reunited with one parent in the United States, it is more likely the child will be the subject of a custody proceeding in the family court. In this case, Bianka initiated a parentage action under the Uniform

---

[1] Because this writ proceeding arises out of a parentage action and all court filings are deemed confidential to protect the privacy of the child, we will refer to the minor and her parents by their first names.

Parentage Act (Fam. Code, § 7600 et seq.) naming her mother as the respondent. Although Bianka's mother did not file a response to the petition, it appears maternity is uncontested. Bianka also filed a pretrial request for order asking the court to place her in the sole legal and physical custody of her mother and to make the additional findings necessary to allow her to petition for SIJ status, namely that she cannot reunify with her father because he abandoned her and it is not in her best interest to return to Honduras. The court declined to make the requested findings primarily because it concluded Bianka's request for an award of sole custody to her mother in an action under the UPA necessarily implicated paternity and parental rights (if any), which in turn made Jorge an indispensible party to the parentage action.

The trial court was particularly concerned, as we are, about the unusual procedural posture and the nonadversarial nature of this case. As we will explain, the UPA is the exclusive means by which unmarried adults may resolve disputes relating to rights and obligations arising out of the parent-child relationship, including child custody, visitation and support. In an action between natural, alleged and/or presumed parents, the parentage of each party to the action is squarely at issue and is adjudicated before issues of custody, visitation and support are considered. Here, because Bianka only named her mother as respondent, she contends only her mother's parentage is at issue in this action. However, Bianka does not simply seek to establish a parent-child relationship with her mother. She also asserts her father, Jorge, abandoned her at birth, physically abused her mother, and on that basis seeks an order from the court placing her in her mother's sole legal and physical custody, without visitation rights for Jorge. Further, Bianka asked the court to issue an order explicitly finding that her father, who she contends is Jorge, abandoned her. By requesting these orders, Bianka necessitates consideration of Jorge's parentage and parental rights.

While we are sympathetic to Bianka's plight, we cannot endorse the approach she pursues here. The UPA simply does not provide a mechanism for the court to issue sole legal and physical custody orders in a vacuum, nor does it authorize a court to make factual findings concerning parental abuse, neglect or abandonment in the absence

3

of a finding of parentage. Further, were we to follow the course suggested by Bianka in this case, we would erode the substantial protections afforded to parents involved in international custody disputes under state, federal and international law.

We conclude that under the circumstances present here, where Bianka's father's identity and whereabouts are known, the court did not abuse its discretion by requiring Bianka to join Jorge to the pending action. To the extent Bianka continues to seek a custody order and/or SIJ findings in a parentage action based on Jorge's abuse, neglect or abandonment, she should amend her petition to name Jorge as a respondent and state all the pertinent facts relating to Jorge's paternity and his alleged abuse, neglect or abandonment; she should then properly serve him with a summons and a copy of the petition. Should Jorge fail to respond—the most likely outcome if, as Bianka alleges, he has no interest in her welfare—Bianka may then attempt to proceed by way of default and obtain the relief she seeks. If obtaining personal jurisdiction over Jorge is problematic, Bianka may attempt to obtain the relief she seeks by entering into a stipulated judgment of paternity with her father.

## FACTUAL BACKGROUND AND PROCEDURE

### A. Bianka's Background

Bianka, now 13 years old, is a native of Honduras. Like an increasing number of minors fleeing rampant violence and poverty in their home countries, Bianka arrived in the United States in late 2013, alone and undocumented. After a brief detention by the Department of Homeland Security, Bianka reunited with her mother, Gladys, who was already living in the United States. Bianka is currently enrolled in school and by all accounts is residing happily with her mother in Los Angeles.

Gladys is also a native of Honduras. She came to the United States in 2005, leaving Bianka (who would have been 2 or 3 years old at the time) in the care of an older daughter. After leaving Honduras, Gladys kept in close contact with Bianka by telephone and frequently sent money to her older daughter for Bianka's care.

Gladys believes Jorge is Bianka's father. Gladys and Jorge never married, but were in a relationship for about 15 years and had four children together, including

4

Bianka. Gladys reported that Jorge left her while she was pregnant with Bianka, and never contacted Bianka or provided any financial support for her. Jorge apparently still resides in Honduras.

### B. Request For SIJ findings

Bianka is the subject of removal (deportation) proceedings and apparently intends to file an application for SIJ status. In order to obtain a state court order containing the factual findings required under federal law, Bianka and Gladys turned to the family law division of the superior court.

#### 1. Gladys's parentage action

Initially, Gladys filed a petition under the Uniform Parentage Act (UPA) naming Jorge as the respondent. Gladys filed a proof of service indicating personal service of the petition on Jorge. Jorge never responded; however, no default was ever entered against him. Apparently, Gladys later dismissed that petition without prejudice because she believed the court lacked personal jurisdiction over Jorge and would therefore be unwilling to enter a default judgment of paternity against him.[2]

#### 2. Bianka's parentage action

On December 12, 2014, Bianka filed a petition under the UPA naming Gladys as the respondent.[3] The petition alleges Gladys is Bianka's mother and requests a court order awarding sole legal and physical custody to Gladys. Both Bianka and Gladys submitted declarations in support of the petition. As the basis of her custody request, Bianka asserted her biological father, Jorge, abandoned her physically, emotionally, and financially before her birth. Bianka asked the court to find that her father abandoned

---

[2]  We will refer to this parentage action between Gladys and Jorge as the dismissed action.

[3]  Unless otherwise noted, all further references to a parentage action are to the second action in which Bianka is the petitioner and her mother, Gladys, is the respondent.

5

her within the meaning of Family Code section 7822, subdivision (a)(3),[4] and place her in her mother's sole custody. In addition, Bianka asserted Jorge had beaten her mother while she was pregnant. Bianka cited Jorge's domestic violence as another factor relevant to the court's custody determination and argued his conduct constituted abuse within the meaning of the Family Code. Bianka went on to argue that Jorge's abandonment also provided a factual basis for an order containing SIJ findings. Both Bianka and Gladys submitted declarations in support of the petition, in which they recounted Jorge's abuse and abandonment. Bianka's counsel personally served Gladys with a summons and a copy of the petition. Gladys never filed a response to the petition, and her default has not been entered. Jorge was not named or otherwise identified in the petition and there is no evidence in the record indicating Jorge was served or provided with a copy of the petition at the time of filing.

As required by section 7635, Bianka requested the appointment of a guardian ad litem to assist her in the parentage action. Bianka filed proofs of service indicating her counsel sent copies of the guardian ad litem application to both Gladys and Jorge via regular U.S. mail. Bianka's counsel submitted a declaration indicating she notified Jorge by telephone of the application to appoint a guardian ad litem.

On April 23, 2015, Bianka filed a pretrial request for order (RFO), seeking a custody order and an order containing SIJ findings, both predicated on her representation that her father abandoned her before she was born and physically abused her mother during her pregnancy with Bianka. The RFO indicated a hearing would take place on July 14, 2015.

On June 3, 2015, Bianka filed a proof of service indicating her counsel sent Jorge conformed copies of the petition and RFO, together with the supporting documents, via regular U.S. mail. Bianka's counsel advised Jorge by telephone of the hearing on the RFO. On June 24, 2015, Bianka filed another proof of service, this time representing that Stefany Fabiola Montoya Martinez personally served Jorge with

---

[4]    All further undesignated code section references are to the Family Code.

6

copies of the petition, the RFO and the supporting documents. There is no indication in the record these legal documents were translated from English into Spanish. The court held a hearing on July 14, 2015, at which Bianka and Gladys both testified, and took the matter under submission.

C.  **Trial Court's Order Denying Request For Sole Custody and SIJ Findings; Bianka's Writ Petition**

On August 24, 2015, the court issued a 15-page order summarizing the basis of its decision to deny Bianka's request for orders placing her in her mother's sole legal and physical custody and making SIJ findings under Code of Civil Procedure section 155. The court noted the unusual procedural posture of the case and expressed concern that Bianka had not named her alleged biological father as a party in the parentage action and, further, the court had no basis to assert personal jurisdiction over him. Although Bianka's mother stated in a sworn declaration that Jorge is the only man who could be Bianka's father, the court observed none of the evidence before the court contained an acknowledgment of paternity *by Jorge*. The birth certificate produced by Gladys listed Jorge as Bianka's father but was not signed by Jorge, and Jorge apparently did not provide a voluntary declaration of paternity. The court concluded Bianka's request for an order placing her in her mother's sole custody required it to determine Jorge's paternity.

Further, the court found an award of sole legal and physical custody to Gladys would implicate Jorge's fundamental rights, namely the right to determine how a child is raised. In addition, the court noted a determination of parentage and custody could form the basis of an order for child support. The court declined to "speculate that [Jorge] has no interest in these issues, particularly where there is no evidence of proper service. [Jorge] has the right to participate as a party in a proceeding that seeks to adjudicate his rights in this regard." The court observed Jorge's right to participate in the proceeding was especially important given the serious nature of the allegations (abandonment, neglect, domestic violence) put forward by Bianka. Accordingly, the court found Jorge's joinder to the parentage action was required. The court denied the

7

request for orders regarding custody and making SIJ findings, without prejudice to further application after Jorge had been properly joined, personal jurisdiction issues had been resolved, and a determination of parentage had been made.

Bianka initiated this original proceeding in October 2015. On January 26, 2016, Bianka's counsel informed this court that Bianka's removal proceeding has been administratively closed. However, counsel also advised administrative closure does not finally resolve a case, but rather temporarily removes it from the immigration court's calendar. Because it appears Bianka's removal proceeding may be reactivated at any time, her case is not moot.

## ISSUES PRESENTED

In this writ proceeding, we are presented with the following issues: In a parentage action between a child and her mother, in which the child seeks an order awarding sole legal and physical custody to her mother predicated upon the allegation that her father abandoned her, may the court make the requested custody order without first determining parentage and presumed parent status (if any) with respect to the father? Where the father's identity and whereabouts are known, is it an abuse of discretion for the trial court to require father's joinder as an indispensible party to the parentage action?

We conclude that a request for sole legal and physical custody in a parentage action necessarily requires a court to consider the parentage of both parents. Where the identity and whereabouts of the alleged father are known, it is not an abuse of the court's discretion to require his joinder to the parentage action. Further, joinder permits a parent residing outside California to appear specially to litigate custody issues in the proceeding, an option wholly consistent with applicable due process requirements. We therefore deny the petition for writ of mandate.

## DISCUSSION

### 1. Standard of Review

The applicable standard of review is well established. We independently review questions of law, including the construction and application of a statute. (See, e.g.,

8

*Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 370 [interpreting provision of the UPA], disapproved on another point by *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532.) We review a trial court's factual findings for substantial evidence. (*Id.* at pp. 368-369.)

Further, " '[t]he determination of whether a party is necessary or indispensable is one in which the court "weighs 'factors of practical realities and other considerations.' " [Citation.] In view of that standard, we review the trial court's ruling for abuse of discretion. [Citation.]' [Citations.]" (*Dreamweaver Andalusians, LLC v. Prudential Ins. Co. of America* (2015) 234 Cal.App.4th 1168, 1173.)

### 2. Federal Law Regarding Special Immigrant Juvenile Status

In 1990, Congress enacted the SIJ statute to open a path for abused, neglected, and abandoned undocumented minors to become lawful permanent residents.[5] (*In re Y.M.* (2012) 207 Cal.App.4th 892, 910.) " 'SIJ status allows a juvenile immigrant to remain in the United States and seek lawful permanent resident status if federal authorities conclude that [certain] statutory conditions are met.' [Citation.]" (*Leslie H.*

---

[5] The SIJ statute, 8 U.S.C. § 1101(a)(27)(J), provides: "as used in this chapter . . . [¶¶] [t]he term "special immigrant" means . . . [¶¶] an immigrant who is present in the United States—(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [¶] (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and [¶] (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, except that—[¶] (I) no juvenile court has jurisdiction to determine the custody status or placement of an alien in the custody of the Secretary of Health and Human Services unless the Secretary of Health and Human Services specifically consents to such jurisdiction; and [¶] (II) no natural parent or prior adoptive parent of any alien provided special immigrant status under this subparagraph shall thereafter, by virtue of such parentage, be accorded any right, privilege, or status under this chapter . . . . "

*v. Superior Court* (2014) 224 Cal.App.4th 340, 344 (*Leslie H.*).) A minor who obtains SIJ status may apply after five years to become a naturalized citizen. (*Ibid.*)

" 'While the federal government has exclusive jurisdiction with respect to immigration [citations] . . . , state juvenile courts play an important and indispensable role in the SIJ application process.' [Citation.]" (*Leslie H., supra,* 224 Cal.App.4th at p. 348, first omission in original.) "[F]ederal courts have long recognized that state courts have jurisdiction over child welfare determinations, including matters pertaining to undocumented minors, absent an express federal provision to the contrary. Federal law imposes requirements on state dependency plans and recognizes 'the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests.' [Citations.]" (*In re Y.M., supra,* 207 Cal.App.4th at p. 908.) Accordingly, federal regulations require a child applying for SIJ status to obtain an order from a state court making several factual findings as a predicate for SIJ eligibility. (8 C.F.R. § 204.11(d)(2) (July 6, 2009).)

Specifically, the child must obtain a state court order finding the child has been declared a dependent of a juvenile court in accordance with state law or has been legally committed to, or placed under the custody of, an agency or department of a state, or an individual or entity appointed by a state or juvenile court located in the United States. (8 U.S.C. § 1101(a)(27)(i).) In addition, the court must find reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law. (8 U.S.C. § 1101(a)(27)(ii).) Finally, the state court must also find it would not be in the child's best interest to be returned to his or her country, or the parents' country, of nationality or last habitual residence. (8 U.S.C. § 1101(a)(27)(iii).)[6]

---

[6] The current federal regulation requires the order to state the child is eligible for long term foster placement. (8 C.F.R. § 204.11(c)(4), (5) (July 6, 2009).) That portion of the regulation is out of date, as it does not reflect the 2008 amendment to the SIJ

10

Although the state court order is a necessary component of the child's application for SIJ status, the order does not guarantee or determine whether a particular child qualifies for relief. Our courts recognize "[a] state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country." (*Leslie H*., *supra,* 224 Cal.App.4th at p. 351.) It is the federal government, through the United States Citizenship and Immigration Services (USCIS), which makes the determination to grant (or deny) the child's petition for adjustment of status. (*Ibid.*)

As a practical matter, however, our courts, as well as immigrant children seeking our assistance, should bear in mind the factors considered by the USCIS when it reviews a petition for SIJ status. In 1998, Congress modified the SIJ statute to require the Attorney General's express consent to the dependency order serving as the basis of the SIJ petition. (H.R.Rep. No. 105-405, 1st Sess., pp. 22-23 (Nov. 13, 1997).) According to the legislative history, Congress modified the SIJ statute "in order to limit the beneficiaries of this provision to those juveniles for whom it was created, namely abandoned, neglected, or abused children, by requiring the Attorney General to determine that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect." (H.R.Rep. No. 105-405, 1st Sess., p. 130 (Nov. 13, 1997).) Although Congress has since modified the SIJ statute to require the consent of the Secretary of Homeland Security (rather than the Attorney General) to the grant of SIJ status (rather than the underlying dependency order), see 8 U.S.C. § 1101(a)(27)(J)(iii), the agency's concern remains the same: "The

statute which eliminated the foster placement eligibility requirement and replaced it with a requirement regarding parental reunification. (See *Leslie H., supra,* 224 Cal.App.4th at p. 349.)

11

consent determination by the Secretary, through the USCIS District Director, is an acknowledgment that the request for SIJ classification is bona fide. This means that the SIJ benefit was not 'sought primarily for the purpose of obtaining the status of an alien lawfully admitted for permanent residence, rather than for the purpose of obtaining relief from abuse or neglect or abandonment.' (See H.R.Rep. No. 105-405, at p. 130 (1997).) An approval of an SIJ petition itself shall be evidence of the Secretary's consent." (U.S. Citizenship and Immigration Services, Memorandum (Mar. 24, 2009) Trafficking Victims Protection Reauthorization Act of 2008: Special Immigrant Juvenile Status Provisions, by Donald Neufeld & Pearl Chang, available at https://www.uscis.gov/sites/default/files/USCIS/Laws/ Memoranda/Static_Files_Memoranda/2009/TVPRA_SIJ.pdf.) The proposed federal rule designed to implement the 2008 amendments to the SIJ statute, if adopted, will authorize the USCIS to "consider, among other permissible discretionary factors, whether the alien has established, based on the evidence of record, that the State court order was sought primarily to obtain relief from abuse, neglect, abandonment, or a similar basis under State law and not primarily for the purpose of obtaining lawful immigration status; and that the evidence otherwise demonstrates that there is a bona fide basis for granting special immigrant juvenile status." (76 Fed.Reg. 54985 (Sept. 6, 2011) [proposed 8 C.F.R. § 204.11 (c)(i)].)

It appears, therefore, Congress and the USCIS rely upon our state courts to issue orders containing the findings required to support an SIJ petition in the context of ongoing, bona fide proceedings relating to child welfare, rather than through specially constructed proceedings designed mainly for the purpose of issuing orders containing SIJ findings.

### 3. Special Immigrant Juvenile Findings Under Code of Civil Procedure Section 155

The SIJ statute refers to orders made by "juvenile" courts. As a result, our courts questioned which divisions of the superior court could or should make SIJ findings. (See, e.g., *B.F. v. Superior Court* (2012) 207 Cal.App.4th 621 [probate]; *Eddie E. v.*

*Superior Court* (2013) 223 Cal.App.4th 622 [juvenile delinquency].) In 2014, the legislature adopted Code of Civil Procedure section 155, which confirmed any division of the superior court presented with a case involving child welfare (including, but not limited to, juvenile, probate and family law divisions) may make SIJ findings. (Code Civ. Proc., § 155, subd. (a).)[7]

In addition, subdivision (b)(1) of that section specifies the three factual findings required under federal immigration law: "If an order is requested from the superior court making the necessary findings regarding special immigrant juvenile status pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code, and there is evidence to support those findings, which may consist of, but is not limited to, a declaration by the child who is the subject of the petition, the court shall issue the order, which shall include all of the following findings: (A) The child was either of the following: (i) Declared a dependent of the court. (ii) Legally committed to, or placed under the custody of, a state agency or department, or an individual or entity appointed by the court. The court shall indicate the date on which the dependency, commitment, or custody was ordered. (B) That reunification of the child with one or both of the child's parents was determined not to be viable because of abuse, neglect, abandonment, or a similar basis pursuant to California law. The court shall indicate the date on which reunification was determined not to be viable. (C) That it is not in the best interest of the child to be returned to the child's, or his or her parent's, previous country of nationality or country of last habitual residence." (Code Civ. Proc., § 155, subd. (b)(1).)

---

[7] The full text of Code of Civil Procedure section 155, subdivision (a), reads: "A superior court has jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act (8 U.S.C. Sec. 1101(a)(27)(J) and 8 C.F.R. Sec. 204.11) (July 6, 2009), which includes, but is not limited to, the juvenile, probate, and family court divisions of the superior court. These courts may make the findings necessary to enable a child to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code."

We consider two issues related to the construction of Code of Civil Procedure section 155, subdivision (b). To that end, we note the well established principle that " '[t]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.]' [Citation.]" (*In re Marriage of Harris* (2004) 34 Cal.4th 210, 221.)

First, neither the SIJ statute nor Code of Civil Procedure section 155 defines abandonment. However, the Family Code contains two definitions of abandonment. Under section 3402, abandonment occurs when a parent leaves a child without provision for reasonable and necessary care or supervision. (§ 3402, subd. (a).) Under section 7822, which applies in proceedings to terminate parental rights prior to a child's adoption, the same showing is required with the additional requirement of proof that the parent intended to abandon the child. (§ 7822, subd. (a).) Bianka argues the section 3402 definition should apply. Although no published decision has expressly decided which definition applies, the court in *Eddie E. v. Superior Court* (2015) 234 Cal.App.4th 319, assumed, without any discussion or analysis, the definition of abandonment found in section 7822 applies. (*Id*. at p. 332.) Bearing in mind the intent behind Code of Civil Procedure section 155, we conclude the definition of abandonment found in section 3402 should apply. The SIJ statute focuses on the child's current ability to reunify with one or both parents; whether the parents' abandonment was intentional or unintentional, its impact on the child's welfare and ability to be cared for in her home country is the same. For that reason, we do not require proof of intentional abandonment as required under section 7822, subdivision (a).

Second, Code of Civil Procedure section 155 is silent on an issue that has caused some consternation in the superior courts (and possibly also among our colleagues), namely, *when* SIJ findings should be made. No published California case has addressed the issue and we have no meaningful legislative history on this point to guide us in our interpretation of the statute. Bianka suggests the court is required to make SIJ findings at *any* time, upon request. In the proceedings below, Bianka requested a custody order

14

and an order making SIJ findings in a pretrial request for order (RFO). At that time, Bianka's mother had not filed any response to the petition, her default had not been taken, and the court had not yet made a parentage determination. The court expressed concern that issuance of SIJ findings at the pretrial stage was premature. We agree.

The Judicial Council has not yet adopted rules regarding SIJ findings made by courts in the family law division. However, the Judicial Council forms[8] developed for use in family law matters contemplate SIJ findings may be requested in the following proceedings: petition for dissolution of a marriage or domestic partnership; petition to establish a parental relationship; petition for custody and support of minor child(ren); and a petition for a domestic violence restraining order. (Judicial Council Forms, form FL-356.) In all cases, the petitions must request sole physical custody of the child. (*Ibid*.) Courts may also make SIJ findings in connection with an adoption request or other proceeding in which sole custody of the child is requested. (*Ibid*.)

Under Code of Civil Procedure section 155, subdivision (b)(1)(A), an order containing SIJ findings confirms a custody order has been made. To support a petition for SIJ status effectively, that custody order must be in effect not only at the time the petition is filed, but also at the time the petition is adjudicated by the UCJIS. (Cf. 8 C.F.R. § 204.11(c)(5) (July 6, 2009) [requiring continuing eligibility for long-term foster care, under prior version of SIJ statute]; and see 76 Fed.Reg. 54985 (Sept. 6, 2011) [proposed 8 C.F.R. § 204.11 (b)(iv)].) In light of our legislature's intent to facilitate access to federal immigration relief, we construe Code of Civil Procedure section 155 to mean SIJ findings must be made after or in connection with a judicial custody determination after a full and fair evidentiary hearing. And, in an action brought under the UPA, the court must determine parentage of the proposed custodial parent(s) *before* making a custody order. (See *Scott v. Superior Court* (2009) 171 Cal.App.4th 540, 544.) As for when the custodial determination may be made—

---

[8]    Forms adopted by the Judicial Council are adopted as rules of court. (Cal. Rules of Court, rule 5.7(a).)

15

i.e., pretrial or after trial—we hold that so long as notice and a meaningful opportunity to be heard are provided, a custodial order may be made at any point in the proceedings. (See § 3022 [authority to issue custody order at any time].) However, we emphasize that the custody order must be in effect when the petition for adjustment of the child's status is heard by federal immigration authorities. We also note federal immigration authorities have discretion to place removal proceedings on hold during the pendency of state child welfare proceedings, as is the case here.

Accordingly, we could deny the petition for writ of mandate because the court properly found the RFO in this case was premature. However, because the record appears to contain sufficient evidence to establish Gladys is Bianka's natural mother, the question of her parentage is unlikely to present a significant obstacle in this case. Rather than remand for a determination of parentage without answering the additional questions posed by the petition, and in the interest of providing guidance that has been requested by the lower courts and the bar, we address the substantive issues presented in this case concerning the interplay between parentage, custody, jurisdiction, and SIJ findings.

### 4. Parties to a Parentage Action

As discussed, *ante*, the court found that Jorge is an indispensible party who must be joined to the pending parentage action. Although we disagree with some portions of the court's analysis, we see no abuse of discretion in the court's conclusion that Jorge should be joined as a party in this case.

#### A. The UPA generally

" 'The Uniform Parentage Act (UPA), Family Code section 7600 et seq., provides the statutory framework for judicial determinations of parentage, and governs private adoptions, paternity and custody disputes, and dependency proceedings.' " (*In re D.A.* (2012) 204 Cal.App.4th 811, 824.) The UPA is "the procedural vehicle by which unmarried parents establish their rights vis-à-vis each other and their children." (*Erika K. v. Brett D*. (2008) 161 Cal.App.4th 1259, 1267.)

16

Under the UPA, a parentage action may be initiated by a child, the child's natural mother, a presumed parent, a prospective adoptive parent or, in specific circumstances, other interested parties. (§ 7630.) With regard to paternity, the UPA distinguishes between "alleged," "biological," and "presumed" fathers. (See *Francisco G. v. Superior Court* (2001) 91 Cal.App.4th 586, 595-596.) "A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has not achieved presumed father status, is an 'alleged' father. [Citation.]" (*In re Zacharia D.* (1993) 6 Cal.4th 435, 449, fn. 15.) "A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . . " (*Ibid.*) The UPA contains specific provisions relating to presumed parent status. For example, a man married to the natural mother is presumed to be the natural father of a child born during the marriage or within 300 days after the marriage is terminated. (§ 7611, subd. (a).) Further, a man who receives a child into his home and openly holds the child out as his natural child is presumed to be the child's natural father. (§ 7611, subd. (d).) Presumed fathers are vested with greater parental rights than alleged or biological fathers. (*In re Zacharia D., supra,* 6 Cal.4th at pp. 448-449.)

Parentage actions arise most commonly in two circumstances. First, the natural mother, the child, or the state may want to establish a parent-child relationship between the child and the child's alleged biological father, or another person who is a presumed parent within the meaning of section 7611, as a predicate for an order of child support. (See, e.g., *Elisa B. v. Superior Court* (2005) 37 Cal.4th 108.) The second common situation is where an alleged or presumed parent wants to establish a parent-child relationship under the UPA in order to secure rights to custody and visitation. (See, e.g., *Adoption of Kelsey S.* (1992) 1 Cal.4th 816.) In both circumstances, issues of parentage and custody are resolved in the context of a proceeding that is, at least to some extent, adversarial.

The present case, however, does not fall into either of these two common scenarios. Here, Bianka initiated the parentage action naming her natural mother as the only respondent and it appears maternity is uncontested. In our search of California

law, we found relatively few published cases in which maternity was at issue and none involving an uncontested parentage action between a child and her natural mother. Although such a parentage action is not expressly prohibited under the UPA or the applicable rules of court, it is certainly a novel use of that statutory scheme. Further, as the court observed and as Bianka concedes, the pending parentage action seeks to preserve the status quo even though nothing threatens to disrupt the status quo— a matter that, in our view, does not appear to require any intervention by the court. Moreover, with respect to Jorge, Bianka does not seek to enforce any obligation arising out of the parent-child relationship and instead seeks a custody order tantamount to a termination of his parental rights as well as an order finding Jorge abandoned her. Those determinations would be more appropriately made in an action to declare Bianka free from Jorge's custody and control under section 7800 et seq.

In any event, the essential problem presented in this case is this: By requesting an order giving her mother sole legal and physical custody predicated on Jorge's abuse and abandonment, Bianka is impliedly asking the court to adjudicate Jorge's custody rights (if any) but she has presented the issue in a case in which Jorge is not a party. The court was understandably reluctant to permit the action to proceed in that fashion, particularly where Jorge was named as a respondent in the dismissed action, Gladys (the petitioner in the dismissed action) personally served him, Jorge never responded but was not defaulted, and no evidence was presented that Jorge was unwilling to enter into a stipulation concerning parentage or custody. Simply put, an uncontested action under the UPA between a child and one parent is not an appropriate means by which to adjudicate both parents' custody rights. Further, in an action under the UPA, it would be inappropriate for a court to find that Bianka's father abandoned her without first determining paternity. While we understand Bianka's desire to obtain immigration relief under federal law, we are constrained by existing state law. We are also mindful, as discussed *ante*, that an order containing SIJ findings will not be useful to Bianka unless it is issued in the context of a bona fide custody proceeding. Because Bianka's parentage action against Gladys appears to have been brought only to obtain SIJ

18

findings, the proceeding below was not a bona fide custody proceeding under the UPA. Indeed, as noted by the trial court, Bianka has lived with her mother for many months in Los Angeles and her mother has had no difficulty obtaining health care, education or anything else for her daughter.

### B. Joinder under the UPA

Bianka contends the court erred as a matter of law by requiring Jorge's joinder in this case. We disagree.

Bianka correctly notes that, as a general matter, the UPA does not require both alleged biological parents to be named as parties in every parentage action. Indeed, under section 7635, only one person *must* be made a party to a parentage action: the child who is the subject of the action, if the child is 12 years of age or older. (§ 7635, subd. (a).) Any other interested party *may* be named as a party. For example, section 7635, subdivision (a), provides that if the child who is the subject of the parentage action is younger than 12 years of age, the child *may* be made a party. (*Ibid.*) Other interested persons, including "[t]he natural parent, each person presumed to be a parent under Section 7611, and each man alleged to be the natural father, *may* be made parties and *shall* be given notice of the action in the manner prescribed in Section 7666 and an opportunity to be heard."[9] (§ 7635, subd. (b), emphasis added.) We therefore agree, as a general matter, Bianka was not required to name Jorge as a respondent in her action to establish a parental relationship with Gladys.

Nevertheless, there are circumstances in which joinder may be appropriate, as in the present case in which Bianka requests an order giving her mother sole legal and

---

[9]  Section 7666, which appears in the chapter of the Family Code addressing termination of parental rights in an adoption proceeding, provides in pertinent part: "notice of the proceeding shall be given to every person identified as the biological father or a possible biological father in accordance with the Code of Civil Procedure for the service of process in a civil action in this state at least 10 days before the date of the proceeding . . . . Proof of giving the notice shall be filed with the court before the petition is heard." (§ 7666, subd. (a).)

physical custody. "The requirements of due process of law are met in a child custody proceeding when, in a court having subject matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard." (*In re Marriage of Torres* (1998) 62 Cal.App.4th 1367, 1378.) While joinder of an alleged parent who lives outside California may not be required in every case in which sole custody is requested, we are hard pressed to think of a circumstance in which it would not be prudent and consistent with principles of due process.

Here, the court applied the mandatory joinder provision found in California Rules of Court, rule 5.24(e), which states: "The court must order that a person be joined as a party to the proceeding if any person the court discovers has physical custody or claims custody or visitation rights with respect to any minor child of the marriage, domestic partnership, or to any minor child of the relationship." (Cal. Rules of Court, rule 5.24(e)(1)(A).) Bianka argues joinder is unnecessary because Jorge does not claim custody or visitation rights. Bianka's contention is without merit because there is no admissible evidence[10] in the record before us which establishes whether Jorge does or does not wish to claim any custody or visitation rights in this case. Although the court could have inferred, as Bianka urges, Jorge does not claim any interest in Bianka's custody because he has not taken any action to establish his parentage or right to custody in the pending proceeding, it was not required to do so.

In any event, we need not decide whether joinder of an alleged parent is required in every case in which sole custody is requested because the court's joinder order was appropriate in this case under the permissive joinder provision of California Rules of Court, rule 5.24. (Cal. Rules of Court, rule 5.24(e)(2).) That section of the rule states in pertinent part: "The court may order that a person be joined as a party to the proceeding if the court finds that it would be appropriate to determine the particular issue in the

---

[10] We agree with the trial court that statements purportedly made by Jorge during a telephone call with Bianka's counsel, as relayed in a declaration submitted to the court by Bianka's counsel, are inadmissible hearsay.

proceeding and that the person to be joined as a party is either indispensable for the court to make an order about that issue or is necessary to the enforcement of any judgment rendered on that issue." (*Ibid*.)  For at least two reasons, the court did not abuse its discretion by requiring Jorge's joinder in this case.

First, although Bianka maintains Jorge's paternity is irrelevant because she brought an action to establish only maternity, the fact remains that she has placed Jorge's paternity squarely at issue by requesting an order containing a factual finding that *her father* abandoned her.  Further, in the context of a custody proceeding, a court properly considers a wide range of factors bearing on a child's best interests, including in this case Jorge's paternity and presumed father status, if any, as well as his ability and desire to have a relationship with Bianka, if any.  (See § 3020, subd. (b) [noting the importance of frequent and continuing contact between a child and both parents]; § 3010 [noting a child's natural mother and father, if the father is a presumed father under section 7611, are equally entitled to custody of their child].)  Although the declarations from Bianka and Gladys indicate Jorge has not fostered a relationship with Bianka and has no interest in doing so in the future, it was within the court's discretion to attempt to give Jorge a meaningful opportunity to refute those allegations before making the orders requested by Bianka in this case.

Second, although Bianka's petition does not expressly seek to terminate Jorge's parental rights, the order she seeks would have a similar effect.  Bianka asked the court to place her in her mother's sole legal and physical custody.  Ordinarily, a sole custody order does not deprive the noncustodial parent of all parental rights.  (See *In re Marriage of Brown & Yana* (2006) 37 Cal.4th 947, 958.)  But here, although Bianka's petition takes no position on visitation, as a practical matter she would have to oppose any visitation rights for Jorge, as visitation is incompatible with the requested SIJ finding that reunification is not viable.  Substantial geographic separation, which will often (if not always) be present in cases in which SIJ findings are requested, further exacerbates the effect of a sole custody order in this case.  In our view, the court was

21

reasonably concerned about making such an order in a nonadversarial proceeding to which the noncustodial parent is not a party, as is the case here.

Bianka asserts joining Jorge to the pending action will unnecessarily delay the proceedings, confuse the issues, complicate matters and/or interfere with effective disposition of the case, all factors which may impact a court's decision regarding joinder.[11] (Cal. Rules of Court, rule 5.24(e).) Such concerns are misplaced here since Bianka is aware of her father's identity and his whereabouts and, in fact, has provided him with copies of her petition and related documents. She has therefore already demonstrated that she has the ability to comply with the procedural requirements for joinder.[12] (Cal. Rules of Court, rule 5.24(e)(3).)

We recognize Bianka will not only need to join Jorge to the action but must also establish a basis for personal jurisdiction over him, and we appreciate that process may prove difficult for Bianka and other similarly situated children seeking SIJ status. We note, however, that if the nonresident parent stipulates to parentage, that stipulation constitutes a general appearance, and establishes personal jurisdiction, in the lawsuit. (See *Adoption of Matthew B.* (1991) 232 Cal.App.3d 1239, 1270 [challenge to stipulated judgment of paternity for lack of personal jurisdiction rejected].) The record before us

---

[11]  California Rules of Court, rule 5.24(e) states in pertinent part: "In deciding whether it is appropriate to determine the particular issue in the proceeding, the court must consider its effect upon the proceeding, including: [¶] (A) Whether resolving that issue will unduly delay the disposition of the proceeding; [¶] (B) Whether other parties would need to be joined to make an effective judgment between the parties; [¶] (C) Whether resolving that issue will confuse other issues in the proceeding; and [¶] (D) Whether the joinder of a party to determine the particular issue will complicate, delay, or otherwise interfere with the effective disposition of the proceeding."

[12]  Cal. Rules of Court, rule 5.24(e)(3), provides: "If the court orders that a person be joined as a party to the proceeding under this rule, the court must direct that a summons be issued on *Summons (Joinder)* (form FL-375) and that the claimant be served with a copy of *Notice of Motion and Declaration for Joinder* (form FL-371), the pleading attached thereto, the order of joinder, and the summons. The claimant has 30 days after service to file an appropriate response."

does not establish whether Jorge was willing or unwilling to stipulate to a judgment of paternity. However, if the court were to proceed in the absence of personal jurisdiction over Jorge, any order regarding his parentage and any default judgment would necessarily be void and subject to a motion to vacate in the future. (See *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1227 [holding judgment of paternity void in the absence of personal jurisdiction over father].) This alternative is untenable.

We emphasize our narrow holding that joinder is appropriate under the circumstances present in this case—namely, where the identity and whereabouts of the child's absent parent are known. In other circumstances, including situations in which the child's absent parent cannot be located or identified, joinder would be inappropriate. (See § 7635 [UPA notice must comply with § 7666]; § 7666 [notice not required where alleged biological father cannot be located or his identity cannot be ascertained].)

### 5. Notice and the Opportunity to Be Heard

#### A. Uniform Child Custody Jurisdiction Enforcement Act

##### (i) Special appearance by a party to a child custody matter

The provisions of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) relating to personal jurisdiction provide additional support for the trial court's view that Jorge should be made a party to the pending parentage action.

The exclusive method of determining subject matter jurisdiction (i.e., proper jurisdictional situs) in multi-jurisdictional child custody cases is the UCCJEA. (§ 3400 et seq.) " 'The UCCJEA takes a strict "first in time" approach to jurisdiction. Basically, subject to exceptions not applicable here [citations], once the court of an appropriate state (Fam. Code, § 3421, subd. (a)) has made a "child custody determination," that court obtains "exclusive, continuing jurisdiction . . . ." (Fam. Code, § 3422, subd. (a).) The court of another state: [¶] (a) Cannot modify the child custody determination (Fam. Code, §§ 3421, subd. (b), 3422, subd. (a), 3423, 3446, subd. (b)); [and] [¶] (b) Must enforce the child custody determination (Fam. Code, §§ 3443, 3445, 3446, 3448, 3453) . . . . ' [Citation.]" (*In re Marriage of Nurie*

23

(2009) 176 Cal.App.4th 478, 491.)  Under the UCCJEA, a California court must "treat a foreign country as if it were a state of the United States for the purpose of" determining jurisdiction.  (§ 3405, subd. (a); *In re Marriage of Nurie, supra,* 176 Cal.App.4th at p. 490.)

In some cases, it may be appropriate to litigate the existence of jurisdiction under the UCCJEA in the first instance.  (§ 3407.)  The UCCJEA contemplates that jurisdictional issues will be raised by a party to the custody proceeding.  (§ 3407 [if there is a question about jurisdiction, "the question, *upon request of a party*, must be given priority on the calendar and handled expeditiously"], emphasis added.)  However, as a nonparty, Jorge could not contest the court's subject matter jurisdiction in this case by, for example, bringing a motion to quash service of the summons.

Further, the UCCJEA allows a parent to participate in pending child custody proceedings without submitting to personal jurisdiction in this state.  (§ 3409, subd. (a).)  This is an important protection afforded to out-of-state parents, as it affords parents the opportunity to participate in proceedings relating to child custody without subjecting themselves to the general jurisdiction of the court with respect to other issues, such as liability for child support.  However, the special appearance provision applies only to "[a] *party* to a child custody proceeding, including a modification proceeding, or a *petitioner* or *respondent* in a proceeding to enforce or register a child custody determination."  (§ 3409, subd. (a), emphasis added.)  Notably, Jorge currently cannot appear specially under § 3409 because he is not a party to the action.  Conceivably, Jorge could appear specially in the pending proceeding and waive all rights to custody.

In our view, joining Jorge as a party to the parentage action and giving him the opportunity to make a special appearance in the action is wholly consistent with the court's obligation to ensure that he receives both notice and a meaningful opportunity to be heard.  At a minimum, the court did not abuse its discretion by considering due process in making its determination regarding joinder.

24

### (ii) Subject matter jurisdiction under the UCCJEA

On a separate point, Bianka argues in her petition, as she did below, that because the court has subject matter jurisdiction over her custody proceeding under the UCCJEA, the court necessarily had the authority under section 3020 to issue any custody order it deemed to be in Bianka's best interest, notwithstanding other substantive issues which might bear on that question, such as paternity. This is not the correct analysis. The question of subject matter jurisdiction is a preliminary, necessary step that relates purely to the proper forum as between California and other possible jurisdictions. The substantive decision—i.e., whether placing Bianka in her mother's sole legal and physical custody is in her best interest—is made with reference to the applicable family law statutes including, in this case, the UPA. (See *In re Marriage of Nurie, supra*, 176 Cal.App.4th at p. 492 [noting the UCCJEA " 'eliminates the term "best interests" from the statutory language to clearly distinguish between the jurisdictional standards and the substantive standards relating to child custody and visitation' "].) Stated differently, the fact that the court had jurisdiction to make a custody order does not dispense with the need to issue a custody order in accordance with applicable law.

### B. SIJ findings in legal guardianship proceedings

Because it appears to us Bianka's primary goal in bringing her parentage action was to obtain an order containing SIJ findings, we consider the extent to which parents in Jorge's circumstance might receive notice and the opportunity to be heard prior to the issuance of SIJ findings in other contexts. Specifically, where an undocumented child does not reunite with a parent in the United States, a child may need a legal guardian. To a large degree, parents of a proposed ward in a guardianship proceeding are similarly situated to a parent such as Jorge, as the effect of the appointment of a legal guardian has largely the same effect as the award of sole legal and physical custody, i.e., suspension of the parents' ability to exercise legal rights and make decisions about the child. (See *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1123-1124 ["When the court appoints a guardian, the authority of the parent 'ceases.' [Citation.] The court has

discretion to grant visitation [citation], but otherwise parental rights are completely suspended for the duration of a probate guardianship [citation.]”].)  Although parents are not parties in a guardianship proceeding, we find it helpful to consider to what extent they have the right to notice and a meaningful opportunity to be heard regarding both the appointment of a guardian and a request for SIJ findings.

In a guardianship proceeding, a proposed ward’s parents must receive actual notice of the hearing on a petition for the appointment of a guardian.  Proof of that notice must be presented to the court before the appointment of a guardian may be made.  (Prob. Code, § 1511, subds. (a), (b)(3), (h); see *Guardianship of Debbie V.* (1986) 182 Cal.App.3d 781, 785-786 [noting parents of proposed ward must be served under Code of Civil Procedure section 415.10 or 415.30 and confirming that “[u]nder either of these methods, actual receipt of the notice is assured, i.e., the subject of the notice will either be personally served or will acknowledge receipt of a mailed notice”].)  A parent who objects to guardianship is entitled to a hearing.  (See *Guardianship of Ann S., supra,* 45 Cal.4th at p. 1122.)

With respect to SIJ findings, California Rules of Court, rule 7.1020 provides any person authorized to bring a petition for the appointment of a guardian, including a proposed ward over the age of 12 years old, may file a request for an order making SIJ findings in a guardianship proceeding.  (Cal. Rules of Court, rule 7.1020(b)(1).)  The proposed ward’s parents are entitled to receive a copy of the request for SIJ findings and notice by mail, at least 15 days prior to the hearing, of the time and date of the hearing on the request.  (Cal. Rules of Court, rule 7.1020(c); Prob. Code, § 1406 [requiring notice by mail 15 days prior to hearing].)  Importantly for our purposes, rule 7.1020 also expressly provides that any person entitled to notice of the request for SIJ findings, i.e., the proposed ward’s parents, “may file an objection or other opposition to the request.” (Cal. Rules of Court, rule 7.1020(d).)

Under this rule, the proposed ward’s parents receive actual notice and a meaningful opportunity to be heard regarding SIJ findings, which necessarily includes

a finding of parental abandonment. No less due process should be required in an action brought under the UPA in which a party requests SIJ findings.[13]

### C. Due process in default proceedings

Although we have held it was not an abuse of discretion for the court to require Jorge's joinder in this case, we are aware of the distinct possibility that Jorge will not oppose or respond to the petition. Indeed, if it is true, as Bianka alleges, that Jorge has no interest in her well being, his default—assuming personal jurisdiction is established or not contested—seems the most likely outcome. However, for the reasons that follow, in addition to adding Jorge as a party, Bianka must provide Jorge with notice of the specific findings of abuse, neglect or abandonment she seeks.

"It is fundamental to the concept of due process that a defendant be given notice of the existence of a lawsuit and notice of the specific relief which is sought in the complaint served upon him. The logic underlying this principle is simple: a defendant who has been served with a lawsuit has the right, in view of the relief which the complainant is seeking from him, to decide not to appear and defend. However, a defendant is not in a position to make such a decision if he or she has not been given full notice." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 (*Lippel*); see also Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2015) ¶ 12:3, p. 12-2 ["As in civil actions generally, a family law default judgment may only be granted for the *specific relief* requested in the petition served on respondent . . . "].)

---

[13] We also note that the Judicial Council's proposed rule 5.130 regarding SIJ findings in family law custody proceedings would not, as drafted, provide a nonparty with notice and the opportunity to be heard before SIJ findings are made. Proposed rule 5.130(c), provides only that "[a] person entitled to notice of a Request for Order (FL-300) under rule 5.92 may file an objection or other opposition to a request" for SIJ findings. (Judicial Council of California, Invitation to Comment W16-11, Family Law: Special Immigrant Juvenile Findings, available online at http://www.courts.ca.gov/documents/W16-11.pdf.) California Rules of Court, rule 5.92 requires only that notice be given to the opposing party in the action. (Cal. Rules of Court, rule 5.92(a)(6) ["The moving party must file the documents with the court to obtain a court date and then serve a copy on the responding party"].)

Thus, in an action for marital dissolution, a court may not issue a default judgment imposing an obligation of child support where such relief was not requested in the petition for dissolution. (See, e.g., *Lippel, supra*, 51 Cal.3d at pp. 1167-1171.) Similarly, in a marital dissolution proceeding in which one party defaults, a court cannot dispose of property not listed in the petition for dissolution. (See, e.g., *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 879-880.)

Here, Bianka's parentage petition indicates she is seeking a sole custody order as well as an order containing SIJ findings. Although the petition cites the SIJ statute as well as Code of Civil Procedure section 155, the petition does not indicate Bianka seeks an order specifically finding that Jorge abandoned her and/or committed acts of domestic violence against Gladys. Consistent with the due process principles discussed above, we hold that in a default proceeding under the UPA, a court may only issue an order containing SIJ findings regarding parental abuse, neglect, abandonment or other similar actions if those factual allegations were contained in the original petition or in a request for order served together with the summons and a copy of the petition. Only in such circumstances would a parent be on notice of the potential for a negative factual finding of abuse, neglect or abandonment.

We also require disclosure of allegations regarding parental abuse, neglect, abandonment, or similar actions because those findings carry significant consequences in future family law proceedings. For example, under section 3044, subdivision (a), there is "a rebuttable presumption that an award of sole or joint physical or legal custody of a child to a person who has perpetrated domestic violence is detrimental to the best interest of the child . . . . " (See also *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1497, 1499 [noting section 3044 "presumption applies whenever there is a finding that one parent committed an act of domestic violence against another parent, a child, or a child's siblings within the past five years," even in the absence of a restraining order].) It would be extremely problematic for our courts to make a factual finding of abuse in a default proceeding, thereby triggering the rebuttable presumption

28

against custody, where the alleged abuser did not have notice of and an opportunity to rebut the allegation.

Further, a finding of abuse or similar conduct has the potential to defeat a parent's claim for return of a child to the child's country of habitual residence under the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention).  (See *Noergaard v. Noergaard* (2015) 244 Cal.App.4th 76, 87-88 ["First, it is true that 'the [Hague] Convention prohibits courts in countries other than that of the child's habitual residence from "adjudicating the merits of the underlying custody dispute." [Citations.]'  [Citation.]  But it is necessarily also true that a Hague Convention court must consider in the first instance the respondent's allegations of grave risk that postdate earlier foreign custody orders.  [Citation.]  Courts must consider these issues in deciding whether to impose undertaking requirements if the court orders the child's return, or to deny the child's return"].)  We note that in the context of cases brought under the Hague Convention, courts have held due process requires an opportunity for a parent to be heard, at a full evidentiary hearing, on claims that would prevent a child's return under the Hague Convention.  (*Id*. at p. 87.)  And although there is no evidence here that Gladys removed Bianka from Jorge's custody or that Honduras is a signatory to the Hague Convention, the procedure used in this case and the relief requested under the UPA could allow a parent to circumvent and undermine the Hague Convention and other mechanisms designed to effectuate the prompt return of a child taken by one parent across international borders in violation of a right of custody.  (See *Abbott v. Abbott* (2010) 560 U.S. 1, 20 [noting the Hague Convention's main purpose is "deterring child abductions by parents who attempt to find a friendlier forum for deciding custodial disputes"].)

In short, in light of the significant consequences which flow from findings of abuse, neglect, abandonment or some similar conduct by a parent, such findings should not be made in a default proceeding without adequate and specific notice.

## DISPOSITION

The petition is denied.

**CERTIFIED FOR PUBLICATION**


                                              LAVIN, J.

WE CONCUR:




EDMON, P. J.




ALDRICH, J.